**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**AXA XL INSURANCE COMPANY**
**UK LIMITED, et al.,**

    **Plaintiffs,**

v.                                                      **Case No. 8:25-cv-202-WFJ-AAS**

**GARY MCPHERSON as Personal**
**Representative of the ESTATE of**
**VIRGINIA MCPHERSON, et al.,**

    **Defendants.**

_____/

## <u>ORDER</u>

Plaintiff AXA XL Insurance Company UK Limited (AXA XL) requests the court to determine that certain documents listed in its privilege log are privileged from disclosure. (Doc. 117). AXA XL's motion follows the court's order regarding production after conducting an *in camera* review. (Doc. 111). That order (Doc. 111) directed AXA XL to file a subsequent motion if AXA XL contested the court's determination that the identified documents should be produced. AXA XL partially contests the court's determinations and timely filed its motion arguing that certain identified documents should remain protected from production. (Doc. 117). Defendants Delta Healthcare II (Delta) and Michael Eloian responded in opposition. (Doc. 121). On April 3, 2026, Delta

1

and Mr. Eloian amended their response. (Doc. 122). On April 8, 2026, AXA XL replied to the amended response to address alleged false and misleading statements of fact and law. (Doc. 128).

## I.   Analysis

Two categories of disputed documents remain at issue: (1) documents relating to retaining coverage counsel and gathering information for coverage counsel's consideration; and (2) communications between Attorney Shaw and TransEleven concerning the coverage issues. (Doc. 117, pp. 3–4).[1]

### A. Documents related to retaining coverage counsel

#### i. Emails between TransEleven and Underwriters and corresponding log entries

AXA XL contests the production of three email chains: one on October 1, 2024, and two on October 2, 2024.[2] (Doc. 117, p. 4). These emails occurred between Meleta Smith (the executive director at TransEleven), Justas Alksmantas (a former adjuster with AXA XL), Chandler Moore (an adjuster for Renaissance), Benedetta Alberti (another adjuster for Renaissance), and individuals with Price Forbes (the broker serving as a conduit for the follow-

---

[1] Exhibit A of AXA XL's motion includes a privilege log, which lists all of the documents identified in the court's March 13, 2026 Order. The disputed documents, the subject of this motion, are highlighted in yellow on the privilege log. (Doc. 117-1).

[2] See Exhibit A highlighted entries on pages 1–2. (Doc. 117-1).

market underwriters). (Doc. 117, p. 4). AXA also contests the production of log notes, consisting primarily of cut-and-pasted emails between TransEleven and AXA XL's adjuster in England, entered by Meleta Smith.[3] (Doc. 117, p. 6) AXA XL argues the work product doctrine should protect these October emails and the communications themselves concerning the coverage issue and retention of counsel were made in anticipation of coverage litigation after the defendants first gave notice to Plastridge on September 20, 2024. (*Id.* at 5). Delta and Mr. Eloian argue the work product protection should be overruled. (Doc. 122).

Federal Rule of Civil Procedure 26(b)(3), sets forth the work product doctrine and states:

> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> 1. They are otherwise discoverable under Rule 26(b)(1); and
>
> 2. The party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3). "[W]ork product may be either fact work product, which protects information gathered in anticipation of litigation, or opinion work

---

[3] See Exhibit A highlighted entries on pages 3–4. (Doc. 117-1).

product, which consists of mental impressions, opinions, or legal theories." *Gualtieri v. TD Bank, Nat'l Ass'n*, No. 8:10-CV-1468-T-27TBM, 2011 WL 13302505 at *2 (M.D. Fla. Mar. 10, 2011). "Fact work product is subject to qualified protection and may be discoverable upon a showing of substantial need and an inability to obtain the substantial equivalent of the materials by other means without undue hardship." *Bingham v. Baycare Health Sys.*, No 8:14-CV-73-T-23JSS, 2016 WL 1546504 at *4 (M.D. Fla. Apr. 15, 2016) (citations omitted). "Once [the party who asserts the claim of privilege] has shown the application of the work product privilege, the burden shifts to [the other side] to demonstrate the existence of exceptional circumstances for the discovery of otherwise privileged documents." *United States v. Zahn*, No. 3:22-CR-23-BJD-MCR, 2022 WL 17811346 at *8 (M.D. Fla. Dec. 19, 2022) (citation omitted).

After further consideration, these emails are due to be produced. Even if the disputed emails are fact work product, the defendants have demonstrated a substantial need and inability to obtain the substantial equivalent of the emails by other means without undue hardship.

First, the emails are relevant and proportional to the claims at issue. This is a coverage dispute and the "question of whether an insured's untimely reporting of loss if sufficient to result in the denial of recovery implicates a two-

4

step analysis." *Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 599 F. App'x 875, 879 (11th Cir. 2015). "The first step is to determine whether the insured provided timely notice. Next, if notice was untimely, prejudice to the insurer is presumed, but that presumption may be rebutted." *Id.* (citing *Bankers Ins. Co. v. Macias,* 475 So.2d 1216, 1218 (Fla.1985)). "Under Florida law, 'the burden [is on] the insured or the third-party beneficiary to prove the lack of prejudice." *Gemini II Ltd. v. Mesa Underwriters Specialty Ins. Co.*, 592 Fed. App'x 803, 806 (11th Cir. 2014) (alteration in original) (quoting *United States v. United Bonding Ins. Co.*, 422 F.2d 277, 280 (5th Cir. 1970)). Therefore, the emails concerning the coverage issue and retention of counsel are otherwise discoverable under Rule 26(b)(1) and are within the proper scope of discovery.

Second, the defendants have a substantial need to obtain the emails and an inability to obtain a substantial equivalent of the information. The defendants have a substantial need because if notice was untimely, the burden is on the defendants to show the insurer was not prejudiced. The defendants may meet this burden by showing the insurer had a viable opportunity to set aside the default or the insurer refused to act despite being aware of the suit. *See Hamid Mohebbi Pharm.D v. Founders Ins. Co.*, 41 F. Supp. 3d 1412, 1417 (S.D. Fla. 2014) ("[T]he insurer is not prejudiced if it had a viable opportunity

to set aside the default or if the insurer was aware of the suit and refused to act.").[4] Without discovery into these emails, the defendants are left to guess at what occurred after the September 20th notice and so lack the factual information necessary for their defense that the insurers were not prejudiced by late notice. Further, the defendants cannot obtain this information by other means. Therefore, AXA XL's work product protection claim is overruled, and AXA XL must produce the three emails chains: one on October 1, 2024, and two on October 2, 2024, and the corresponding log notes entered by Meleta Smith. *See Simon v. State Farm Mut. Auto. Ins. Co.*, No. 614CV2125ORL37GJK, 2015 WL 12866988 at *4 (M.D. Fla. Oct. 16, 2015) ("several federal courts permit discovery of the insurer's claim file when it is shown the information sought relates to the underlying coverage claim, even if the information may also be relevant to a prospective bad faith claim.").

---

[4] In the reply (Doc. 128), AXA XL argues Delta's and Mr. Eloian's motion misstates the law, and the evidence is not "necessary to rebut the presumption of prejudice" as Delta and Mr. Eloian argue, but rather "incapable of rebutting the presumption of prejudice." The court acknowledges that AXA XL's actions are distinguishable from the insurer's actions in the cases Delta and Mr. Eloian cite because AXA XL sought vacatur in state court. Without ruling on the merits of the argument, the undersigned does not find it a misstatement of law to argue the proposition that prejudice towards the insurer may be rebutted by showing the insurer had a viable opportunity to act despite late notice.

### ii. Log Notes concerning Ms. Smith's conversation with James Kalyvas and Cathy Edge

AXA XL also contests the production of Meleta Smith's log notes concerning her conversations with James Kalyvas[5] and Cathy Edge.[6] Cathy Edge is TransEleven's contact at Plastridge. AXA XL contends "[t]hese communications were made for the purpose of gathering information ultimately necessary for coverage counsel's evaluation as to whether Delta and Eloian breached the policies' prompt notice provisions and . . . accordingly are protected by the work-product privilege." (Doc. 117, p. 6). Delta and Mr. Eloian argue they have a substantial need and face undue hardship to obtain the information elsewhere.

Upon consideration, the undersigned agrees with the defendants and AXA XL's work product protection claim is overruled for the same reasons previously discussed.

### B. Communications between Attorney Shaw and TransEleven

Turning to the second category of disputed documents, AXA XL contends the written communications between Meleta Smith and Attorney James Shaw[7]

---

[5] See Exhibit A at 4.c. (Doc. 117-1).

[6] See Exhibit A at 4.e, 5.f, 6.g and the highlighted entry on page 15. (Doc. 117-1).

[7] See the highlighted entries on Exhibit A at pages 6−13. (Doc. 117-1).

are protected by the attorney-client privilege. (Doc. 117, pp. 8–10). Attorney Shaw represents the underwriters, not TransEleven or Meleta Smith herself, but AXA XL argues the attorney-client protection applies because TransEleven's and Meleta Smith's involvement was "reasonably necessary" for the transmission of the communication. In response, the defendants raise concerns about the completeness of AXA XL's *in camera* production and point out that the attorney-client privilege does not protect the discovery of underlying facts contained in attorney-client communications. (Doc. 122, pp. 18–20). AXA XL's reply clarifies that it fully produced all documents for *in camera* inspection. (Doc. 128, p. 2).

Florida law governs the applicability of the attorney-client privilege. *Eric De Ford, et al., v. James Koutoulas, et al.*, No. 6:22-CV-652-PGB-DCI, 2024 WL 6990202 at *1 (M.D. Fla. Aug. 5, 2024) ("In a diversity action, such as this one, Florida law governs the Court's application of the attorney-client privilege."). Section 90.502 of the Florida Statutes sets out the attorney-client privilege:

> A communication between lawyer and client is 'confidential' if it is not intended to be disclosed to third persons other than ... [t]hose to whom disclosure is in furtherance of the rendition of legal services to the client [and t]hose reasonably necessary for the transmission of the communication.

*Id.* (quoting Fla. Stat. § 90.502(c)) (formatting omitted). The attorney-client protection extends to the "giving of information to the lawyer to enable the

8

lawyer to provide informed advice." *Affordable Bio Feedstock, Inc. v. Darling Intern. Inc.*, No. 6:11-CV-1301-ORL-28, 2012 WL 5845007 at *2 (M.D. Fla. Nov. 19, 2012). The attorney-client privilege does not apply merely because an attorney is copied on an email, and it is generally recognized the communication of factual information is not protected by the attorney-client privilege. *Giannerini v. Embry-Riddle Aeronautical Univ., Inc.*, No. 6:22-CV-2075-RBD-LHP, 2023 WL 12167886 at *2 (M.D. Fla. Dec. 1, 2023); *see Rashada, v. Hathcock*, No. 3:24CV219-MCR-HTC, 2025 WL 4644425 at *4 (N.D. Fla. Dec. 25, 2025) ("[C]ommunications which are unrelated to legal advice, such as emails without content that simply transmit a document, are not privileged.").

The substance of the disputed communications is nonconfidential and nonprivileged information forwarded to Attorney Shaw without additional content added. (See Exhibit A highlighted entries re: "Attorney Client Emails between TransEleven and the Butler WKC law firm" pages 16−20; 21−30). The attorney-client privilege does not protect the underlying email chains themselves because they were not created for the purpose of obtaining legal advice. *Rashada*, 2025 WL 4644425 at *9 (determining "emails which contained no privileged communications, but merely forwarded documents" should be produced).

9

However, AXA XL has met its burden to show three emails sent from Meleta Smith to Attorney Shaw were created to give information to Attorney Shaw to render legal advice or otherwise sought legal advice. The first email was sent from Meleta Smith to Attorney Shaw on November 13, 2024 (See the highlighted entries on Exhibit A regarding pages 1−3 of the "Attorney Client Emails between TransEleven and the Butler WKC law firm"). This email is protected by the attorney-client privilege because Meleta Smith, whose involvement was reasonably necessary for the rendition of legal services as shown by AXA XL, created the email to provide information for Attorney Shaw to render legal advice concerning the claim file. The second email was sent from Meleta Smith to Attorney Shaw on November 4, 2024 (See the highlighted entry on Exhibit A regarding pages 7−11 of the "Attorney Client Emails between TransEleven and the Butler WKC law firm"). This email is protected by the attorney-client privilege because it was created for the purpose of giving Attorney Shaw information so he could render legal advice. The third and last email protected from disclosure is an email that was sent from Meleta Smith to Attorney Shaw on November 11 (See the highlighted entries on Exhibit A regarding page 45 of the "Attorney Client Emails between TransEleven and the Butler WKC law firm"). This email was mistakenly sent to James Wright of TransEleven and then forwarded to Attorney Shaw. It is protected because

10

it seeks legal advice from Attorney Shaw.

## II.    Conclusion

For the reasons stated above AXA XL's motion (Doc. 117) is **DENIED in part and GRANTED in part**. Except for the three emails from Meleta Smith to Attorney Shaw identified in the last section above, AXA XL must produce the documents to the defendants in accordance with the court's prior *in camera* order.

In addition, to the extent Delta and Mr. Eloian request the court to direct AXA XL to produce additional documents not covered by the *in camera* review the request is **DENIED**. *See Mount Zion Ame Church v. Church Mut. Ins. Co.*, No. 3:21-CV-1039-MMH-PDB, 2021 WL 5882717 at *1 (M.D. Fla. Dec. 13, 2021) ("a request for affirmative relief . . . is not properly made when simply included in a response to a motion."). Moreover, AXA XL did not withhold documents from the court's *in camera* review. AXA XL submitted the documents in question for *in camera* review and thereafter continued to withhold the specified documents pursuant to the court's order (Doc. 111). (Doc. 128, p. 2).

**ORDERED** in Tampa, Florida, on April 8, 2026.

11

AMANDA ARNOLD SANSONE
United States Magistrate Judge